McCray and Others *v.* Lipp and Others.

WILL.—*Rule in Shelley's Case.*—A. made his will, as follows: "And it is my will that my son John shall have that land as follows: the south-west quarter of section twenty-two, in town twenty-two, north of range one west, to be for his use his life, and then to fall to his heirs."

*Held,* that this gave to the devisee the fee simple, according to the rule in Shelley's case.

SAME.—*Evidence.*—Where the law fixes the intention of the testator from the terms of a will, parol evidence of the condition, character, and habits of the devisee as well as declarations made by the testator at the time of making the will, in order to show that the testator only intended to give the devisee a life estate, are inadmissible.

APPEAL from the Clinton Circuit Court.

DOWNEY, C. J.—Suit by the appellants against the appellees to recover the possession of certain real estate. There was a trial by the court, and a finding and judgment for the defendants. The plaintiffs claimed as the heirs of John McCray, Sen., while the defendants claimed as the grantees of John McCray, Jr. The title of John McCray, Jr., depended on the will of his father, which is as follows:

"In the name of God, Amen.

"I, John McCray, of Clinton county, and State of Indiana, being sound in memory and understanding, thanks be to Almighty God for the same, being mindful of my mutability, do make and constitute this my last will and testament.

"First and principally, I commend my spirit to God that gave it, in hopes of a joyful resurrection, and body to the

McCray and Others *v.* Lipp and Others.

earth, when it shall please God to separate my soul and body, to be buried decently. And as to such worldly estate which it hath pleased Almighty God to bless me with, I give and dispose as follows:

"(Items.) It is my will, I do order and direct that all my debts and funeral expenses be paid. I do order, and nominate, and appoint my friends, William Douglass and John Douglass, both of Clinton county, to be my executors of this, my last will and testament.

"It is my will that my son James shall have sixty dollars out of my estate. It is my will that my son Samuel, I allow him eighty dollars, to be paid out of my estate. And it is my will that my three daughters, Elinor, Martha, and Mary, to have one hundred dollars each, to be paid out of my estate; and it is my will that my son John shall have that land as follows: the south-west quarter of section twenty-two, in town twenty-two, north of range one west, to be for his use his life, and then to fall to his heirs. And it is my will that my son William shall have all that lot in the prairie, being the west half of the south-east quarter of section eight, in town twenty-one north of range one west, and the west half of the south-east quarter of section twenty-nine, and the east half of the south-west quarter of the south-west quarter of section twenty-nine, in township twenty-two, north of range one west, being the place on which Irwin lives. And further, it is my will that my son William shall keep his mother her lifetime, but give her the choice to live with him or any of his brothers or sisters when she please. And further, it is my will that all the money that shall be on hands after all the debts and legatees be paid, William shall have, to keep his mother, and the use of the family while they live together. And further, it is my will that the children all live together and work together until the(y) take (break) up housekeeping themselves. And it is my will that the wagon, gears, and horses shall belong jointly to my sons John and William, for the use of the place and family. Again, it is my will that if the money due me in Virginia

cannot be collected, or any part of the same, all the leg-atees shall lose a part, according to their portions. And further, I allow the carriage to be sold for the benefit of the family. I publish this, and no other, to be my last will and testament."

If John McCray, Jr., took the fee under the will, then the defendants, as his grantees, were the owners of the land, but if he took only a life estate, the plaintiffs, as the heirs of John McCray, Sen., are the owners. A majority of the court are of the opinion that that part of the will which says, "And it is my will that my son John shall have that land as follows : the south-west quarter of section twenty-two, in town twenty-two, north of range one west, to be for his use his life, and then to fall to his heirs," gave to John the fee simple, according to the rule in Shelley's case.

Parol evidence was offered to show the condition, charac-ter, and habits of John, with a view of raising an inference that his father did not intend to entrust him with the fee simple ; and also it was proposed to prove the declaration of the father, at the time of making the will, that he only intend-ed to give John a life estate. We all agree that the latter evidence was properly excluded ; and a majority of us agree that the other evidence was also properly excluded. We think that the law fixes the intention of the testator, and that, in a case like this, parol evidence cannot be admitted to show any other intention. The father having given a life estate to John, and having limited the remainder to his heirs, by the same conveyance, John took the fee.

Under the rule in Shelley's case, the fee passes in opposi-tion to the apparent intention of the testator. See *Siceloff* v. *Redman's Adm'r*, 26 Ind. 251, and the cases there cited. It could not be useful to allow the introduction of parol evidence, with the view of ascertaining the intention of the testator, when that intention cannot, under the rules of law, be made effective, when it is ascertained.

The judgment is affirmed, with costs.

PETTIT, J., (dissenting)—This suit was brought by the

appellants against the appellees, to recover possession of real estate.

The testator died, and John, named in the will, sold the land, the use of which was given him for his life, and made a deed for it in fee simple, and died without issue; and the appellants, his brothers and sisters, and the descendants of his deceased brothers and sisters, brought this suit against the purchasers of the lands from John, claiming that John took by the will only a life estate. The questions for consideration are the construction of the will, and the refusal of the court to allow certain parol evidence to show the condition of the testator's family, and his declarations of his intentions and purposes at the time of the execution of the will.

What interest or estate did John take in the land by virtue of the will? Was it a life estate only? or was it a fee simple? The first and fundamental rule to be observed in the construction of a will, is to ascertain, if possible, and carry into effect, the intention of the testator, if such intention be not forbidden by some law of the land, such as the creation of a perpetuity against law, or devising lands to one who is prohibited from holding real estate, as an alien. 2 Bl. Com. 500; 4 Kent Com. 534–5; Redfield on Wills, 432; *Lutz* v. *Lutz* 2 Blackf. 72; *Baker* v. *Riley*, 16 Ind. 479; and *King* v. *Beck* 15 Ohio, 559.

A man is prohibited from violating the law of the land by his will, as fully as by his deed; but he is at liberty to dispose of his property as he pleases, if in so doing he violates no law. If, then, the testator gave John the "use" of the land for his life, and after his death gave it to his heirs, he made a legal disposition of it, and such an one as was forbidden or prohibited by no law or public policy of the State. I think I cannot be mistaken in saying that it is the clearly expressed will of the testator that John should take no more than the "use" of the land for his life, and that at his death the fee simple should go, or to use his own words, "fall to his heirs." Indeed, a later clause in the will even limits this exclusive right of "use" to John during his life: "And

further, it is my will that the children all live together, and work together, until they break up housekeeping themselves. And it is my will that the wagon, gears, and horses shall belong jointly to my sons John and William, for the *use* of the place and family." It is evident that this was his home place, where he and his children then lived; for this and the land he gives to his son William (which he describes as "the place on which Irwin lives") were all the lands he had to dispose of. All the children then in the family were to share the *use* and occupancy of the farm, stock, &c., with John, as long as *they*, not *he*, should elect. They all had a right jointly with him to its use as long as they chose, but when they should "break up housekeeping," the place was to be for John's exclusive use during his life, and at his death to "fall to his heirs."

The word "use" is twice used in this will; once in relation to the real estate, and once in reference to the personal property, and in both instances in the ordinary or literal sense, that of the usufruct of the thing designated.

The appellants (plaintiffs below) offered to prove by parol evidence the condition and circumstances of the family of the testator at the time of making his will; that John was unmarried, of very intemperate and reckless habits; and that these facts were known to the testator at the time of making the will, as tending to show his purpose; but the court refused it. This was error. Had it been necessary to aid the court to interpret the will, it should have been allowed. *Stevenson* v. *Druley,* 4 Ind. 519; 1 Greenl. Ev., secs. 286, 289. The parol evidence offered, to prove what the testator said at the time of the execution of the will, was properly rejected by the court. This rule is so well settled that it is not necessary to cite authorties.

It is contended that this case comes within the rule in Shelley's case. I think not. That rule is not inflexible when applied to devises. It yields to the manifest intention of the testator. *Doe* v. *Jackman,* 5 Ind. 283; *Siceloff* v. *Redman's Adm'r,* 26 Ind. 251.

McCray and Others *v.* Lipp and Others.

That is not a rule of construction, but of property, which had its origin in feudal tenure, and was first adopted to secure to the lords the profits, rights, and perquisites incident to inheritances. It is at best a mere artificial technicality, the maintenance of which is to displace the clear intention of the testator and produce injustice, when justice ought to prevail. It has met with denunciation and severe criticism from the ablest judicial minds in England and this country, till it has become the practice of courts whenever the question arises, to hold that the particular case then under consideration does not come within the rule in Shelley's case. It has been abrogated by many of the states, and greatly modified in England by 3 and 4 William 4. *Siccloff* v. *Redman's Adm'r, supra.* It is the high and stern duty of this court to conform its judicial action, when we attempt to walk by the light of precedent from another country, to the nature of our government and institutions.

The intention, if not unlawful, must be followed. How can his "will that the children all live together on this land until they break up housekeeping themselves," be reconciled with the hypothesis that John could, immediately after their father's death, sell the farm, and cast the other children from the home their father had willed to them jointly with John? The children had well defined rights there, not depending on the will or caprice of John, but derived from the same source and co-equal with his, as long as they chose to exercise those rights. He could not arbitrarily determine these rights by a sale of the fee simple.

I think the judgment ought to be reversed.

*J. N. Sims,* for appellants.

*L. McClurg,* for appellees.