CHRISTIAN BELSLAY

*v.*

EDWARD C. ENGEL.

*Filed at Ottawa June 16, 1883.*

1. · WILL—*devise construed as passing life estate, and not falling within rule in Shelly's case.* A testator devised to his grand daughter "the free use and occupation of" certain land, "to have and to hold, to use, occupy and enjoy the same, together with all the rents, issues and profits thereof, with the appurtenances, during her natural life." In giving other bequests, the will provided: "It is my will, and this bequest is made upon the express declaration, that in case any of said grand children should depart this life without issue of their body, that then all their share of said real estate (or to whom the use thereof is bequeathed as aforesaid) shall be equally divided among all my grand children and their legal representatives, and the title thereto thereafterwards so vest forever. It is my will that no title in fee to any of said land shall vest in my said grand children, and I declare it to· be my will that they shall only have a life estate therein, and that the fee simple shall vest in their legal heirs. And it is my will that they, nor any of them, shall have any right to sell, dispose of, mortgage or incumber, in any manner, any of said land, and that they shall keep it free and clear for their legal heirs, to whom it shall descend forever:" *Held,* that the grand daughter just named took only a life estate, and that the devise to her did not come within the rule in *Shelly's case.*

2. The rule in *Shelly's case* is, at most, a technical rule of construction, and must give way to the clear intention of the testator or donor, when that intention can be ascertained from the instrument in which the words supposed to be words of limitation are used.

WRIT OF ERROR to the Circuit Court of Woodford county; the Hon. DAVID McCULLOCH, Judge, presiding.

Messrs. SHAW & EDWARDS, for the plaintiff in error:

We do not deny that to bring this case within the rule in *Shelly's case* is to disregard the intention of the testator. This is the frequent effect of the rule, but it has become one of property, which the courts may not disregard. *Welsch* v. *Savings Bank,* 94 Ill. 191.

The case of *Baker* v. *Scott,* 62 Ill. 86, is conclusive of this. See, also, *Brislain* v. *Wilson,* 63 Ill. 173.

The final, controlling declaration of the testator in the case at bar is, that the "fee simple shall vest in their legal heirs,"— that is, in the heirs generally of his grand children, who are to take as a class not ascertained, fixed or named in the will, as purchasers, but to be ascertained from the Statute of Descents, when the descent is cast.

Mr. WM. L. ELLWOOD, for the defendant in error:

If the language used is not such as to imperatively require the application of the rule in *Shelly's case,* the court will not defeat the express wish of the testator. The great and lead-ing principle in the construction of wills is the intention of the testator, when not inconsistent with the rules of law. *Rountree* v. *Talbot et al.* 89 Ill. 246.

The word "heirs," as used in the latter part of the thir-teenth clause of the will, seems to be used in the same sense as "children," or "issue," as it is preceded by the declaration that in case any of the grand children should depart this life without issue of their body, their share should be equally divided among all said grand children. *Beacraft* v. *Strawn,* 67 Ill. 32; *Hodgson* v. *Ambrose,* Douglass, 337.

To effectuate the clear intention of the testator the words "heirs," "issue," and "children," may be construed inter-changeably. *Bradden* v. *Cannon,* 1 Grant's C. 60; *Bowers* v. *Porter,* 4 Pick. 198; *Ebby* v. *Ebby,* 5 Pa. St. 461; *Butler* v. *Huestis,* 68 Ill. 602.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The only question for decision in this case is, whether the language of the sixth and thirteenth clauses of the will of Joseph Belslay, deceased, brings the devise therein made to his grand daughter, Catharine Belslay, within the rule in *Shelly's case,* so as to give her the fee in the lands specifically

devised to her in the sixth clause, or whether she only takes a life estate in such lands. There can be no doubt it was the intention of the testator to give to the devisee only a life estate in the lands bestowed on her, and it is thought a correct construction of the several clauses of the will accords with that intention. The lands in question are specifically devised by the sixth clause of the will, which is as follows: "*Sixth*—I give and bequeath unto my grand daughter, Catharine Belslay, the free use and occupation 'of" the lands in dispute, "to have and to hold, to use, occupy and enjoy the same, together with all the rents, issues and profits thereof, with the appurtenances, during her natural life." Had this clause stood alone, it would not be doubted the devisee would only take a life estate in the lands devised to her. Of this no question is made. The difficulty arises on the thirteenth clause of the will, which is as follows: "*Thirteenth*—It is my will, and this bequest is made upon the express declaration, that in case any of my said grand children should depart this life without issue of their body, that then all their share of said real estate (or to whom the use thereof is bequeathed as aforesaid) shall be equally divided among all my grand children and their legal representatives, and the title thereto thereafterwards so vest forever. It is my will that no title in fee to any of said land shall vest in my said grand children, and I declare it to be my will that they shall only have a life estate therein, and that the fee simple shall vest in their legal heirs. And it is my will that they, nor any of them, shall have any right to sell, dispose of, mortgage or incumber, in any manner, any of said land, and that they shall keep it free and clear for their legal heirs, to whom it shall descend forever." In seeking for the true meaning of this thirteenth clause, it is well to bear constantly in mind the fact the testator had only, by the sixth clause of his will, given the devisee a life interest in the lands devised to her,— that is, she is "to have and to hold, to use, occupy and enjoy

the same, together with all the rents, issues and profits
thereof, with the appurtenances, during her natural life."
The devise, in this respect, is equivalent to a devise to her of
a life estate in the property itself.    There is some ambiguity
in the thirteenth clause of the will, as will be seen on a close
reading.    It begins by saying:    "It is my will, and *this* be-
quest is made upon the express declaration," etc.    What
"bequest" is meant?    It is doubtful whether it has reference
to the division of his estate as mentioned in the twelfth clause
of his will, which is the residue of his property, both real and
personal, not before specifically disposed of or required for
the payment of legacies, or whether it has reference to spe-
cific devises mentioned in other clauses of the will.    The
former would seem to be the correct reading.    But conceding
it applies to specific devises, as well as to the division of the
residue of the estate, does it change the character of the
devise as made in the sixth clause of the will?    Extraordi-
nary caution seems to have been taken in drafting the thir-
teenth clause, to express the will of the testator,—that his
grand children shall only have a life estate in the lands
given to them.    That intention is so manifest it is not a
matter of dispute.    Any construction of the will that would
give the grand children of the testator participating in his
bounty a greater estate than a life interest in the devises
made to them, would be in direct opposition to his oft repeated
will and desire.    If his intention in this regard, so plainly
expressed, is to be defeated at all, it is by the use of the
words "legal heirs," in whom the fee simple title is ultimately
to vest, and that, too, by giving to them a technical mean-
ing wholly inconsistent with the context.    This ought not to
be, if it can be avoided without a palpable violation of a
known rule of law.    Construing the sixth and thirteenth
clauses of the will together, it does not seem the language
employed brings the devise made by the sixth clause within
the rule in *Shelly's case*, as it has been defined by this court

in *Baker* v. *Scott*, 62 Ill. 86, or in *Butler* v. *Huestis*, 68 Ill. 594. It is, at most, a technical rule of construction, and has always, since the decision in *Perrin* v. *Blake*, 4 Burr. 2579, given way to the clear intention of the testator or donor, when that intention could be ascertained from the instrument in which the words supposed to be words of limitation were used. This rule will control, unless where it contravenes some settled principle of law,—otherwise, instead of being a rule by which justice could be administered, it would be a source of incalculable mischief in its practical application. No reasoning can disabuse the mind of the impression made upon it by the plain and natural reading of the sixth and thirteenth clauses of his will, that the testator only intended to give his grand children a life estate in the property bestowed upon them for their use during their natural lives, and no subtle finesse of construction will be adopted to defeat that intention. The case being considered is clearly within the principle of *Butler* v. *Huestis, supra,* and the decision should be controlled by the reasoning in that case.

The decree of the circuit court will be affirmed.

*Decree affirmed.*