No. 11,057.

## MILLETT ET AL. *v.* FORD.

WILL.—*Life-Estate with Remainder to " Heirs."—Intention of Testator.—Rule in Shelley's Case.*—A will provided as follows: "I give and bequeath unto my son, James R. Rachels, during his lifetime, the following real estate," describing it, "to have the use of the above described land during said James' lifetime, and, after his death, to the *heirs* of his body bequeath [begotten] in lawful wedlock, and none others. I also give and bequeath to John C. Rachels, my son," certain described real estate, "said John to have the use of the same during his life, and, after his death, to his *children* bequeath [begotten] in lawful wedlock."

*Held*, that James R. Rachels took only a life-estate in the land devised to him, the fee going to his children.

*Held*, also, that the intention of the testator being plain, the rule in Shelley's case will not be allowed to defeat it.

From the Posey Circuit Court.

*A. P. Hovey* and *G. V. Menzies,* for appellants.

*A. Iglehart, J. E. Iglehart, E. Taylor* and *E. D. Owen,* for appellee.

HOWK, C. J.—In this case the appellee sued the appellants to recover the possession of certain real estate in Posey county, and to quiet his title thereto.   The cause was put at issue and tried by the court, and a finding was made for the appellee ; and over the appellants' motion for a new trial, the court rendered judgment accordingly.

The only error complained of here by the appellants is the overruling of their motion for a new trial.

With his complaint herein, appellee filed an abstract of his title to the lands in controversy.   By this abstract, to which, of course, his evidence was confined, his chain of title to such lands was substantially as follows :

1.   John B. Rachels became possessed of such lands about the year 1825 or before, of which lands he and his assigns held adverse, peaceable possession until his death, which occurred in the latter part of 1858, or early in 1859.

2.   John B. Rachels, on the 25th day of July, 1857, or thereabouts, executed his last will and testament, which was duly admitted to probate in Posey county, whereby he devised such lands to James R. Rachels, who was a son of such testator, in fee simple.

3.   James R. Rachels went into the possession of said lands under said will.   He and his wife afterwards executed to Richard Ford a mortgage, with the usual covenants of warranty ; and Richard Ford became the purchaser of the lands at the sale upon the foreclosure of such mortgage.   At the expiration of the year allowed by law for the redemption of such lands, Richard Ford went into possession thereof by James R. Rachels, as his tenant, and afterwards assigned his sheriff's certificate of such purchase to William M. Ford, the plaintiff herein ; whereupon the sheriff of Posey county executed to the plaintiff his deed therefor, according to law.

4. The defendants herein were the grandchildren of John B. Rachels, and the children of James R. Rachels, and had been in the possession of the lands in controversy since the death of James R. Rachels.

It will be observed that the devise of an estate in fee simple to James R. Rachels, in the lands in controversy, by the last will of John B. Rachels, is an indispensable link in appellee's chain of title. If, as appellants claim, James R. Rachels took no higher or greater estate in such lands than a life-estate for his own life, under the last will of John B. Rachels, and if, as they claim, the lands were devised to them in fee simple, in and by such last will, subject only to the life-estate therein of James R. Rachels for his own life, then it is clear that the appellee had no valid or subsisting title to the lands, and the finding of the trial court in his favor, as against the appellants, was not sustained by sufficient evidence and was contrary to law. This brings us to the consideration of what we regard as the controlling question in this cause, namely: What is the proper and legal construction and interpretation of the last will of John B. Rachels, and, especially, of the devise therein to James R. Rachels?

We set out, in this connection, all the provisions of such last will that can have any possible bearing on the subject of such question, as follows:

"*First.* I give and bequeath unto my son, James R. Rachels, during his lifetime, the following real estate in Posey county, Indiana, to wit" (we omit the description), " making in all one hundred and thirty acres, to have the use of the above described land during said James' lifetime, and, after his death, to the heirs of his body *bequeath* (sic) in lawful wedlock, and none others. I also give and bequeath to John C. Rachels, my son, the balance of my real estate during his lifetime, it being the forty-acres' tract in Gibson county; said John to have the use of the same during his life, and, after his death, to his children *bequeath* (sic) in lawful wedlock."

Vol. 109.—11

The foregoing are the only devises of real property, in the last will of John B. Rachels. In each of these devises, it was the manifest intention of the testator to give his son named therein a life-estate only, for his own life, in the lands devised to him, and, after his death, to give to his children, as the heirs of his body begotten in lawful wedlock, the fee simple estate in such lands. This is clearly so, as it seems to us, beyond any room even for a shadow of doubt. The accepted rule in the courts of this State, for testamentary construction and interpretation, is that the intention of the testator, in making the devise or bequest under consideration, must be ascertained and carried into effect, if possible; but this intention must, generally speaking at least, be gathered from the language of the will itself. *Tyner* v. *Reese,* 70 Ind. 432; *Lofton* v. *Moore,* 83 Ind. 112; *Hinds* v. *Hinds,* 85 Ind. 312; *Downie* v. *Buennagel,* 94 Ind. 228; *Pugh* v. *Pugh,* 105 Ind. 552.

It is claimed, however, by appellee's learned counsel, that "the rule in Shelley's case" is applicable to the foregoing devise to James R. Rachels, and that, under this rule, James R. Rachels took an estate in fee simple, under the testator's will, in the lands devised to him. It is difficult to reconcile "the rule in Shelley's case" with the accepted rule, sometimes called "the cardinal rule," heretofore stated, for testamentary construction and interpretation. But this court has held that, as the common law has been adopted by statute in this State, the rule in Shelley's case is binding upon the courts as a law of real property, and has applied such rule in the construction of devises. *Siceloff* v. *Redman,* 26 Ind. 251; *McCray* v. *Lipp,* 35 Ind. 116; *Gonzales* v. *Barton,* 45 Ind. 295. While we might not agree to the application of the rule in Shelley's case to testamentary construction, if the question could be regarded as an open one, yet we would feel constrained, in a proper case, to adhere to our previous decisions.

In the well-considered case of *McMahan* v. *Newcomer,* 82

Ind. 565, in speaking of the application of the rule in Shelley's case to the construction of a devise of real property, the court says: "A fee will pass if, taking all the provisions of the will together, it is clear that the testator intended to vest such an estate in the devisee.  4 Kent Com. 535; *Smith* v. *Meiser*, 51 Ind. 419.  It is settled law that the rule in Shelley's case will not be allowed to defeat the plain intention of a testator.  *Doe* v. *Jackman*, 5 Ind. 283; *Siceloff* v. *Redman*, 26 Ind. 251; *Helm* v. *Frisbie*, 59 Ind. 526; section 2567, R. S. 1881."

Applying the doctrine of the case last cited to the case under consideration, and taking together all the provisions of the last will of John B. Rachels, we are clearly of the opinion that the testator did not intend to vest the fee simple estate in the lands devised in either of his two sons, James R. or John C. Rachels; that he did intend to vest in each of his sons precisely the same estate, to wit, a life-estate only, for his own life, in the lands devised to the son; and that he further intended that, at the death of each son, James R. as well as John C. Rachels, the fee simple estate in the lands devised to him for his life only should vest absolutely in the children of such son, as the heirs of his body begotten in lawful wedlock.  The language used by the testator, in each of the two devises, is almost identical even to the erroneous use of the word "bequeath," for the word "begotten," in each devise.  Construing and interpreting the devise to James R. Rachels, with reference to all the provisions of the testator's will and in the light afforded by the context, we have no doubt that the testator intended to use, and did use, the words "heirs of his body, *bequeath* [begotten] in lawful wedlock," in such devise, in the sense of, and as synonymous with, the words "children *bequeath* [begotten] in lawful wedlock," as used by such testator in his devise to John C. Rachels.  In other words, it is clear we think, from all the provisions of the will, that the children of each son were intended by the testator to be the ultimate objects of his

bounty, in the lands devised to such son for his life only, and, after his death, to his children as the heirs of his body begotten in lawful wedlock.   In *Doe* v. *Jackman, supra,* it was held that the rule in Shelley's case will not, in any case, be allowed to override the manifest intention of the testator, where such intention is neither unlawful nor inconsistent with established rules of law.   Whenever, as in the case now before us, it is certain that the term *heirs* is used with the intention that they should take as children, or as purchasers, the will should be so construed.   *Rapp* v. *Matthias,* 35 Ind. 332; *Brown* v. *Harmon,* 73 Ind. 412; *Clifford* v. *Farmer,* 79 Ind. 529; *Jones* v. *Miller,* 13 Ind. 337.   See, also, *Hileman* v. *Bouslaugh,* 13 Pa. St. 344.

In the case in hand, we are of opinion that the rule in Shelley's case can not be allowed to override the manifest intention of the testator, in devising the lands in controversy; that, by such devise, James R. Rachels, through whom appellee derives his title, took only a life-estate, for his own life, in such lands; and that, under such devise, after the death of James R. Rachels, the appellants as his children and heirs of his body, begotten in lawful wedlock, became and were the owners in fee simple of such lands, and entitled to the possession thereof.   The finding of the trial court, therefore, was not sustained by sufficient evidence, and was contrary to law; and for these causes appellants' motion for a new trial ought to have been sustained.

The judgment is reversed with costs, and the cause remanded for a new trial.

Filed Nov. 4, 1886; petition for a rehearing overruled Jan. 7, 1887.