Conger *et al. v.* Lowe *et al.*

No. 14,431.

## CONGER ET AL. *v.* LOWE ET AL.

WILL.—*Construction of.—Conditional Life-Estate.—Remainder Over in Fee to Lawful Heirs.*—A testator devised land to his son during his natural life, declaring that upon the death of his son or upon his refusal to occupy or live on the farm, "I will, devise and bequeath the same to the said Samuel M. Conger's heirs." Samuel M. Conger took possession of the farm, but afterwards conveyed it by warranty deed, and ceased to live upon it. This suit is by the children of Samuel M. Conger, who is still in life, their claim being that under the will of their grandfather the title vested in them, and that they became entitled to the possession when their father abandoned and conveyed away the land.

*Held,* that the word "heirs" is to be construed to mean "children," and that upon the death of the testator the devisee took a life-estate in the land defeasible upon condition that he refused to live upon or occupy the estate, and that the will created a vested remainder over in fee to the testator's children, to take effect in possession upon the termination of the estate of the father.

*Held,* also, that immediately upon the conveyance by their father the children were entitled to possession.

SAME.— *Life-Estate.— Remainder.—Restraint upon Alienation.*— Where an estate for life, or years, is created with a reversion to the grantor, or a valid remainder over to designated persons, conditions imposing restrictions and qualifications upon the power to alienate or use the estate are valid.

SAME.—*Power to Restrain Alienation.—Foundation of.*—The foundation of the power to restrain alienation rests upon the fact that there remains, or is vested, in some one a valid remainder or reversion, whose estate in possession is contingent upon some event, which defeats the precedent estate, and who is entitled to take advantage of the prohibited act or use.

SAME.— *Word "Heirs."—Meaning of Term.—Rule in Shelley's Case.*—When it becomes manifest that the word "heirs" was used as a synonym for "children," or in some modified sense, the rule in Shelley's case will not be applied to overturn the testator's intention.

From the Fulton Circuit Court.

*G. W. Holman, R. C. Stephenson* and *J. H. Bibler,* for appellants.

*M. L. Essick, O. B. Montgomery, J. Rowley* and *M. A. Baker,* for appellees.

MITCHELL, J.—The controversy here is over the construction of a clause in the last will and testament of Lewis B. Conger, late of Fulton county, deceased, which reads as follows:

"My beloved wife, Hannah, is to have and to hold the two above described pieces of land during her lifetime; at her decease, I will, devise and bequeath the same to my son, Samuel M. Conger, during his natural lifetime: *Provided,* He will live on and occupy the same; at his death, or his refusal to live on or occupy the same, then and in that case, as well as at the said Samuel M. Conger's death, I will, devise and bequeath the same to the said Samuel M. Conger's lawful heirs."

The testator died in 1874, and at the time of his death his son, Samuel M. Conger, had four children living, born in lawful wedlock. Others have been born to him since. The testator's widow died in 1880. Upon the death of his mother, Samuel M. took possession of the farm devised to him as above, and occupied it with his family until the 21st day of May, 1886, when he conveyed it by warranty deed to Louisa Lowe, wife of Peter D. Lowe, since which time he has ceased to live upon or occupy the land. This suit is by the children of Samuel M. Conger, who is still in life, their claim being that under the will of their grandfather the title vested in them, and that they became entitled to the possession when their father abandoned and conveyed away the farm. It is abundantly clear that the purpose of the testator was: 1. To create an estate for life in his widow, with a remainder over for life to his son, Samuel M.; and 2. To limit the fee over to the "lawful heirs" of his son, the limitation over to take effect in possession, either upon the refusal of his son to occupy the land, or upon his death. Shortly expressed, the devise was to Samuel M. Conger for life, upon condition that he occupy the estate, with a limitation over in fee to his "lawful heirs," to take effect upon

the death, or upon the refusal of the life-tenant to occupy. A preliminary inquiry arises concerning the validity and effect of the condition which makes, or attempts to make, the precedent life-estate of Samuel M. defeasible upon his failure or refusal to occupy the land. The purpose and practical effect of the condition was to impose a restraint. upon the power of the life-tenant to alienate his estate in the land, either voluntarily or involuntarily. Surely, if the continuance of his estate depended upon his taking and remaining in possession during his lifetime, his power to sell was effectually restrained, for of what value was the right to sell if the estate sold was defeated the moment the vendor put the purchaser into possession ?

It is a settled rule in the law that conditions in conveyances, or devises in fee, in general restraint of the power of alienation, are void, as being contrary to the policy of the law, and inconsistent with, and repugnant to, the estate granted. *Allen* v. *Craft*, 109 Ind. 476 ; *Mandlebaum* v. *McDonell*, 29 Mich. 78 (18 Am. Rep. 61); *McCleary* v. *Ellis*, 54 Iowa, 311(37 Am. Rep. 205); 20 Am. Law Reg. 180, and note ; *DePeyster* v. *Michael*, 6 N. Y. 467 ; 1 Shars. & B. Lead. Ca. Real Prop. 130 ; 6 Am. and Eng. Encyc. Law, 877.

Where, however, an estate for life, or years, is created, with a reversion to the grantor, or a valid remainder over to designated persons, conditions imposing restrictions and qualifications upon the power to alienate or use the estate, are valid and maintainable upon reason and authority. Even estates in fee simple may be subjected to valid limitations over, and be made defeasible or subject to forfeiture, upon condition that the grantee, or devisee uses, or fails to use, the estate in a particular way, or for a particular purpose, or conveys it to a certain person, or to any person whatever, or allows it to be sold on execution, or to become encumbered, or the like.

Where a precedent estate is made defeasible upon the happening of a certain event, which event also marks the tak-

ing effect in possession of a valid limitation over, the happening of that event puts an end to the precedent estate, and gives the right of possession to the person in whom the remainder or reversion is vested. The foundation of the power to restrain alienation rests upon the fact that there remains, or is vested, in some one a valid remainder or reversion, whose estate in possession is contingent upon some event, which defeats the precedent estate, and who is entitled to take advantage of the prohibited act or use. *Harmon* v. *Brown*, 58 Ind. 207; *O'Harrow* v. *Whitney*, 85 Ind. 140; *Mandlebaum* v. *McDonell*, *supra*; *De Peyster* v. *Michael*, *supra*.

If, then, it shall be found that the devise created an estate for life in Samuel M. Conger, defeasible upon the condition that he refused to occupy, with a valid reversion or remainder over in fee to persons who are entitled to take advantage of the condition, it must follow that the condition was valid and enforceable. In that event creditors, purchasers, all persons dealing with the land, were chargeable with notice of the will, and of the defeasible character of the estate of the devisee, and of the fact that it was limited over to others, to take effect upon the refusal of the life-tenant to occupy. We adopt the language of Mr. Justice MILLER, in *Nichols* v. *Eaton*, 91 U. S. 716, wherein the learned justice says: " Nor do we see any reason, in the recognized nature and tenure of property, and its transfer by will, why a testator who *gives*, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived." *Cowell* v. *Springs Co.*, 100 U. S. 55; *Woodworth* v. *Payne*, 74 N. Y. 196.

As a matter of course all that has preceded depends upon whether or not the will creates a life-estate, with a valid remainder over in fee.    If, as is contended, Samuel M. Conger took an estate in fee, within the rule in Shelley's case, then the condition is void, because no one can create an estate that in law constitutes a fee, and then deprive the owner of those essential rights and privileges which the law annexes to it, without reserving a reversion to himself, or to some one in whom the right to insist upon the condition is vested.

It is proper now to examine the scheme that the testator had in his mind, and to which he desired to give effect in his will, so as to ascertain if possible whether the phrase "lawful heirs" was used in the popular or technical sense. If it was the intention that the lawful heirs of Samuel M. Conger should take the estate from their father by descent, after the termination of his life-estate, then the whole estate must have vested in him.    When an estate is given to one for life, with the remainder to his heirs, the law by an arbitrary rule vests the whole estate in the ancestor.    *Siceloff* v. *Redman*, 26 Ind. 251 ; *Kleppner* v. *Laverty*, 70 Pa. St. 70 ; 6 Am. & Eng. Encyc. of Law, 879.

The rule is an unbending one, that if an estate be given, as an immediate remainder to the heirs of one in whom an interposed estate is vested, the whole estate is united and vests as an executed estate of inheritance in the ancestor, upon the principle that the inheritance can not be greater than the estate vested in the ancestor.    *Doebler's Appeal,* 64 Pa. St. 9.

The rule that the word " heirs," when found in a will, will be construed as a word of limitation, and not of purchase, unless there be explanatory words clearly showing that it was used in a popular or restricted sense, admits of no exception, and when the word is used as a word of limitation it is wholly immaterial that the testator's intention may be frustrated by the application of the rule.    *Allen* v. *Craft, supra,* and cases cited.    It is only when it clearly ap-

pears from the context that the word was not used as a word of limitation, but of purchase, that the rule will not be permitted to defeat the manifest intent of the testator. When the intention to use a word, supposed to be a word of limitation, as a word of purchase, unmistakably appears in the will, the rule has always yielded to the clear intention of the testator. *Belslay* v. *Engel*, 107 Ill. 182; *Millett* v. *Ford*, 109 Ind. 159.

The rule in Shelley's case is not regarded as a device to discover the testator's intention. It is only applied after his intention has been discovered, when, by its own inexorable force, it unites in the ancestor any estate which his heirs are to take as such, after a precedent estate given to him, no matter what the purpose of the testator may have been.

It should be remembered that there is a material and controlling distinction between a devise of an estate to a person named and his lawful heirs, and a devise to the lawful heirs of a person named, and the fact should be kept in view that the devise under consideration falls within the latter class. Thus, in *Simms* v. *Garrott*, 1 Dev. & Bat. Eq. 393, where a bequest of personal property was made to a person during her natural life, and at her death to her lawful heirs, it was held that a legacy to the lawful heirs of a person living is equivalent, as a description, to a legacy to his next of kin, or to his children. *Shimer* v. *Mann*, 99 Ind. 190; *Darbison* v. *Beaumont*, 1 P. Wms. 229.

Where the devise is made directly to the heirs of a person living, since no one can be heir to the living in the technical sense, there would be no one capable of taking the estate devised, except by construing the word "heirs" to mean "kinsman" or "children." Where the devise is to a person and his lawful heirs, no such obstacle is encountered.

The language employed in the will under consideration makes it certain that the persons referred to therein as Samuel M. Conger's lawful heirs, were to take under the will directly from the testator, and not by descent from

Samuel M. Conger, as heirs. The testator declared in terms that can not be mistaken, that upon the death of his son, or upon his refusal to occupy or live on the farm, " I will, devise and bequeath the same to the said Samuel M. Conger's lawful heirs."

It is clearly apparent that the testator contemplated that the persons designated as " lawful heirs " should be persons living before the death of Samuel M. Conger, because not only the title, but the possession of the estate in remainder over was to vest in them by the terms of the will, as well upon the failure or refusal of his son to occupy the farm as upon his death.

Uncontrolled by the context, the phrase " lawful heirs " would designate those persons who under the statute of descents would succeed to the property in case the testator's son should die intestate. But there was a contingency provided for in the will, upon which the remainder over was to take effect before the death of his son, and it is therefore absolutely certain that the testator did not use the phrase for the purpose of designating the whole class of lineal or collateral relatives, who at the death of his son might fall within that denomination.

It is true that the word " heirs," unless other parts of the will imperatively require it, is to be taken as having been used in its technical sense; yet, when to use it in that sense renders the general purpose and intent of the will insensible under any rule of law, and defeats the manifest purpose of the testator, the circumstances are persuasive that the testator must have used the word to designate some other class of persons than those technically denominated " heirs." When it becomes manifest that it was used as a synonym for " children," or in some modified sense, the rule in Shelley's case will not be applied to overturn the testator's intentions. *Underwood* v. *Robbins*, 117 Ind. 308 ; *Millett* v. *Ford, supra; Ridgeway* v. *Lanphear*, 99 Ind. 251.

As is pertinently said in *Daniel* v. *Whartenby*, 17 Wall.

639, " But if there are explanatory and qualifying expressions, from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the former must yield and the latter will prevail."

As we have already seen, it is clear that the phrase " lawful heirs " could not have been used by the testator to designate those who should succeed to his son's estate upon his death. To give it such a construction would render nugatory and meaningless the provision that the estate was devised to the lawful heirs of the life-tenant in case the latter refused to occupy it. The will is therefore to be read as if the word " children " had been used instead of " heirs."

The conclusion follows that upon the death of the testator Samuel M. Conger took a life-estate in the land in controversy, which was defeasible upon condition that he refused to live upon or occupy the estate, and that the will created a vested remainder over in fee in his children, to take effect in possession upon the termination of the estate of their father. Upon the death of the testator the remainder in fee vested in the children then living, subject, however, to open and let in after-born children, who should be born in lawful wedlock during the lifetime of their father. *Surdam* v. *Cornell,* 116 N. Y. 305; *Monarque* v. *Monarque,* 80 N. Y. 320.

The court erred in sustaining the demurrer to the complaint.

Judgment reversed, with costs.

Filed June 18, 1890.