## GRANGER v. GRANGER ET AL.

[No. 17,706.   Filed May 26, 1896.   Rehearing denied Feb. 19, 1897.]

WILLS.—*Construction.*—*Rule in Shelley's Case.*—Testator devised to his son E certain real estate "to have and to hold the same during the full term of his natural life, and after his death I devise and bequeath the same to the heirs of his body by him begotten, if there be any such heirs him surviving, and should he have no heirs of his body by him begotten, him surviving, then I give and devise the said real estate to him hereinbefore devised to the said Samuel and Sumner and to my granddaughter, Effie Pharr, in equal proportions in fee." *Held,* that the devise was to E for life with remainder to his children and not to his heirs; that the rule in Shelley's Case had no application. *pp. 96–101.*

SAME.—*Construction.*—*Life Estate.*—Where a testator devises only a life estate, and the words describing the devisees of the remainder denote children or other definite persons, or where modifying expressions are used which show that such was the meaning intended, then the persons so designated will take as purchasers, and the life estate will not be enlarged in the first takers.. *p. 107.*

SAME.—*Construction.*—*Life Estate.*—If in the devise of a life estate, the testator has used modifying words in connection with the words of inheritance, the courts will observe the meaning and force of such modifying expressions, in determining whether the intention was to give the estate to the donee and his issue from generation to generation, or to devise his property to his children or grandchildren or other definite persons. *p. 111.*

From the Vanderburgh Superior Court. *Affirmed.*

*J. E. Williamson, B. K. Elliott, W. F. Elliott* and *J. R. Wilson,* for appellant.

*J. G. Owen, H. A. Mattison* and *Frank B. Posey,* for appellees.

HOWARD, J.—Ira P. Granger died seized of the real estate here in controversy. The third item of his will reads as follows:

"Third. I give and bequeath to my third son, Edwin Granger, one-fourth in value of all the real estate of which I may die seized, to have and hold the same during the full term of his natural life, and after his death I devise and bequeath the same to the heirs of his body by him begotten, if there be any such heirs him surviving, and should he have no heirs of his body by him begotten him surviving, then I give and devise the said real estate to him hereinbefore devised to the said Samuel and Sumner and to my granddaughter, Effie Pharr, in equal proportions in fee, provided, nevertheless, that the estate so taken by the said Effie shall be liable to this condition, that should said Effie die without leaving any heir of her body by her begotten and delivered and surviving her, then her share of said real estate should be and become the property of the said Samuel and Sumner absolutely in fee. And I also give and devise to the said Edwin one-fourth of all the personal property of which I may die seized absolutely."

Edwin Granger died after the death of his father, the testator, and left no children surviving, but left the appellant as his widow. The appellees consist of Sumner Granger and the heirs of Samuel Granger, and Effie Pharr.

The appellant claims that, under the clause of the will above set out, her former husband, Edwin Granger, acquired a fee simple in the land in dispute, which has descended to her as his widow.

The appellees claim that under the will Edwin Granger had only a life estate in the land; and that on his death, without children surviving, the land fell to them.

The appellant contends that the rule in Shelley's Case applies to the devise made to Edwin Granger, the word heirs being used in its legal sense; while the appellees contend that the rule in Shelley's Case has no application here, the word heirs being used in the sense of children, as shown by the context.

In its strict legal sense, "heirs" signifies those upon whom the law casts the inheritance of real estate. They are those in the line of descent from the ancestors; and may be grandchildren, or even more remote descendants, as well as children.

The word "heirs," as said by Mr. Anderson (Law Dict., p. 508), "may be used in deeds, as it is often used in wills, for 'children,' or 'issue,' or 'grandchildren.'" "'Issue,'" says the same author (p. 570), "means, *prima facie*, the same as 'heirs of the body,' and in general is to be construed as a word of limitation. But this construction will give way, if there be on the face of the instrument sufficient to show that the word was intended to have less extended meaning, and to be applied only to children or to descendents of a particular class or at a particular time."

So it was said in *Allen* v. *Craft*, 109 Ind. 476: "Strong as is the word 'heirs,' it may be read to mean children, if the context decisively shows that it was employed in that sense by the testator." Citing *Ridgeway* v. *Lamphear*, 99 Ind. 251; *Shimer* v. *Mann*, 99 Ind. 190; 50 Am. Rep. 82; *Hadlock* v. *Gray*, 104 Ind. 596.

It therefore becomes necessary to determine from the will what meaning the testator in this case attached to the word "heirs," or "heirs of his body," in the item of said will above set out. If by the words used he intended to designate those persons who in law would be entitled to inherit property from Edwin Granger, as being in the line of descent from him; then

the estate given would be a fee simple. If by the words used, however, the testator meant to designate Edwin's children simply, then the estate given him by the will would be, as the words also indicate, a life estate only, remainder to such children.

To arrive at the testator's meaning it is not enough to consider only the words to be interpreted. The whole context, all the words of the will, or of the item thereof under consideration, must be considered, in order to arrive at the real intention.

The devise of the estate is, first, to Edwin Granger, "to have and hold the same during the full term of his natural life." This, taken by itself, and without reference to other words in the will, is plainly a life estate. The next clause reads: "And after his death I devise and bequeath the same to the heirs of his body by him begotten, if there be any such heirs him surviving." These words were evidently intended as a devise of the remainder, after the life estate, to the persons named; and the rules for the interpretation of wills require that the intention so manifested be given effect, provided this can be done consistently with law. The third clause of the devise, and the last that we need consider, so far as this interpretation is concerned, is the following: "And should he have no heirs of his body by him begotten him surviving, then I give and devise the said real estate to him hereinbefore devised to the said Samuel and Sumner and to my granddaughter, Effie Pharr, in equal proportions in fee." By these words the testator undoubtedly meant that on the death of Edwin Granger, leaving "no heirs of his body by him begotten him surviving," the remainder should go to Samuel, Sumner and Effie.

What then did the testator mean when speaking of his son Edwin and using the words, "heirs of his body by him begotten him surviving?" The appellees con-

Granger *v.* Granger *et al.*

tend that in using these words the testator referred to children who should be begotten by his son Edwin and who should survive him. It must be said that such meaning seems manifest. It is true that the words "heirs of his body," standing by themselves, might mean any persons in the line of descent from Edwin, and who might in law be entitled to inherit from him; his issue, generally. Certainly, however, the only ones of all such heirs that could be "by him begotten" would be his own natural born children. A man cannot beget any one except his own children. He may have numerous heirs, but the only heirs begotten by him are his own sons and daughters.

Nor can we ignore or pass over this expressive word. To beget is as strong a word as child itself; it is the act by which a child is brought into being. In a measure, the same relation exists between the word beget and the word child, that does between the word create and the word creation; between cause and effect.

Neither was the word used by inadvertence; it is employed over and over in the item of the will, in the same connection, and with the same evident meaning. In speaking of his granddaughter, the testator said, "that should said Effie die without leaving any heir of her body by her begotten and delivered surviving her, then her share of said real estate should be and become the property of the said Samuel and Sumner absolutely in fee." Here there can be no possible mistake as to the meaning; he speaks of an "heir of her body by her begotten and delivered." While the use of the word "begotten" in relation to a mother and child may be unusual; yet no one will say that the word "delivered" does not show such parental and filial relation. And the use here of "begotten" in the same connection fixes the meaning absolutely of the latter word as relating to parent and child.

To beget, as defined by Webster, is, "To procreate, as a father or sire; to generate—commonly said of the father." And in the Century Dictionary the definition given is, "To procreate; generate: chiefly used of the father alone, but sometimes of both parents."

We therefore conclude that by the use of the words, "heirs of his body by him begotten him surviving," the testator referred to children of his son Edwin.

In *Millett* v. *Ford*, 109 Ind. 159, a devise, as interpreted by the court, was to "James R. Rachels, during his life time * * * and, after his death, to the heirs of his body begotten in lawful wedlock;" and it was held that "the heirs of his body begotten in lawful wedlock," meant his children. And this holding was made, notwithstanding the fact that the will did not say, "the heirs of his body begotten *by him* in lawful wedlock." It would seem that "heirs of his body begotten in lawful wedlock," might have referred not only to his children, but also to grandchildren or more remote descendants, all of whom would have constituted his "issue," or "heirs of his body begotten in lawful wedlock," as these terms are understood in their strict legal sense. In the case at bar there is certainly a more definite reference to children, the words being "the heirs of his body by him begotten." Who, indeed, but Edwin Granger's own children could be "heirs of his body by him begotten?" Grandchildren and more distant descendants of other heirs are begotten by their own respective parents, and not by more remote ancestors.

In *Millett* v. *Ford*, the case cited, the court concluded: "Whenever, as in the case now before us, it is certain that the term 'heirs' is used with the intention that they should take as children, or as purchasers, the will should be so construed," citing *Rapp* v. *Matthias*, 35 Ind. 332; *Brown* v. *Harmon*, 73

Ind. 412; *Clifford* v. *Farmer*, 79 Ind. 529; *Jones* v. *Miller*, 13 Ind. 337; *Hileman* v. *Bouslaugh*, 13 Pa. St. 344, 53 Am. Dec. 474. See, *Helm* v. *Frisbie*, 59 Ind. 526; *Earnhart* v. *Earnhart*, 127 Ind. 397; *Griffin* v. *Ulen*, 139 Ind. 565; *Conger* v. *Lowe*, 124 Ind. 368.

The devise to Edwin Granger was, therefore, a life estate only, remainder to his children. Never having had a fee in the land in controversy, his wife, the appellant, now his widow, had no interest in the land during his life, and could not succeed to any at his death. The rule in Shelley's Case has no application.

As to the nature of the rule in Shelley's Case and its application in this State, see *McIlhinny* v. *McIlhinny*, 137 Ind. 411, 24 L. R. A. 489; *Waters* v. *Lyon*, 141 Ind. 170; Henry's Probate Law (2d ed.), sections 626-628.

The demurrers of appellees to the answer of appellant, setting up a fee in her husband under the provisions of the will, were properly sustained.

Judgment affirmed.

## On Petition for Rehearing.

HOWARD, J.—In the learned and able brief filed with their petition for a rehearing, counsel for appellant fail to cite a single Indiana case in support of their contentions, or to explain how we shall distinguish the case before us from former decisions of this court, upon which reliance was placed as authority for the conclusion arrived at in the principal opinion. It is true, that numerous English cases are cited, particularly those of ancient date, as also text writers of that country, besides many American authorities, to show that the devise in this case was an estate tail. But the law has made progress, and American cases have not usually followed closely those precedents of the old country which were based upon

Granger *v.* Granger *et al.*

social and political conditions different from our own. The spirit of early English institutions favored an entail of landed estates, while the spirit of our institutions favors the utmost freedom in the disposal of property.

As said in 2 Preston on Estates, 453, "The statute [*de donis*, or of entails] was considered as a family law, to preserve the property, and maintain the grandeur of the nobles and great men of those days. For that reason, and from the inclination of mankind in general to perpetuate their property in their families, the statute was liberally expounded."

But, even in England, the law in this respect changed from age to age with the changed conditions of society and government. At first, the feudal lord bestowed a tract of land, or rather the use of it, upon his vassal. In time, the right to this use passed, on the death of the vassal, to his heirs; and so the custom grew to make the gift of tenure, in the first instance, to the vassal and his heirs. There was in the beginning no right of alienation in the vassal. The land belonged to the lord, and its use, merely, was given to the vassal, usually in compensation for personal services, military or otherwise. But with the growth of independence on the part of the vassal, arose a claim to a larger estate in the land. As, however, this estate was shared with the heirs, and fell to them, in succession, on the death of the ancestor, a fiction was resorted to in order to cut off the heirs and give full title to the life tenant. Yet even after the fictions of fine and recovery had become recognized means of perfecting title, the old forms still remained; and a deed or devise, in order to carry the full estate, continued to be, as before, to a man and his heirs, so that it became accepted as a rule of law that the whole estate in land could not be otherwise held by one per-

son.    Thereafter, consequently, expressions used to describe the grantee or devisee, though varying from the original words, "to him and his heirs," or "to him and the heirs of his body," but with some similarity of idea, were arbitrarily forced into the same meaning, in order to give stability to family estates, even to the extent of totally disregarding the plain intent of the grantor or testator.    The adjudged cases show a constant struggle against the violence thus done to the natural meaning of the language used in the conveyance of land.    As a result of this struggle, in instances where the modifying words palpably disclosed the intention on the part of the grantor or testator to use the words "heirs," "heirs of the body," "issue," and the like, in the sense of children or other definite persons, the courts began to yield to the obvious meaning of the words used, particularly in the construction of wills.

In 2 Jarman on Wills, Chap. 37, the author considers the effect of such modifying language used in connection with the words, "heirs of the body," and says:    "A devise to A. and to the heirs of his body, or to A. for life and after his death to the heirs of his body, vests in A. an estate tail.    On a devise couched in these simple terms, indeed, no question can arise; for wherever the contrary hypothesis has been contended for, the argument for changing the construction of the words has been founded on some expressions in the context," used by way of limitation or modification.

While the modifying expressions are shown in the prevailing current of the cases cited by Mr. Jarman to have been ineffectual to change the legal effect of the words "heirs of the body," yet cases are also given in which the courts held that the change intended was effected.

In *Doe* v. *Holme*, 3 Wils. 237, 241, 2 W. Bl. 777, the devise was: "To L. for life, with impeachment of waste remainder unto the heirs, male or female, lawfully to be begotten of the body of L., forever, they paying certain sume thereout." The court, as Mr. Jarman says, "inclined to the opinion that this was not an estate in L., but a contingent remainder in fee to the issue."

In *Doe* v. *Laming*, 2 Burr. 1100, the devise was: "To A. and the heirs of her body lawfully begotten or to be begotten, as well females as males, and to their heirs and assigns forever, to be divided equally, share and share alike, as tenants in common." A. died in the testator's lifetime. Lord Mansfield stated, as said in Jarman's text, that "the devise could not take effect at all, but must be absolutely void, unless the heirs took as purchasers."

In *Doe* v. *Ironmonger*, 3 East. 533, the devise was: "To A. and his heirs, upon trust to receive the rents, and apply the same for the support of S. and the issue of her body lawfully begotten or to be begotten, their heirs and assigns forever, without any respect to be had or made in regard to seniority of age, or priority of birth, and in default of such issue, over." The court held that the words "without seniority of age or priority of birth," showed that the heirs of S. took as purchasers or children.

In *Doe* v. *Goff*, 11 East, 668, the devise was: "To M. and the heirs of her body lawfully begotten or to be begotten, as tenants in common, and not as joint tenants. But if such issue should depart this life before he, she, or they should respectively attain their age or ages of twenty-one years, then over." It was held that M. took an estate for life only, remainder to her children. Lord Ellenborough considered that the heirs of the body being to take as tenants in common clearly

demonstrated that children were meant by that description.

In *Crump* v. *Norwood*, also, 7 Taunt. 362, 2 Marsh. 161, "heirs of the body" being described as tenants in common were held to be children.

In *Gretton* v. *Haward*, 6 Taunt. 94, 2 Marsh. 9, the devise was to a wife for life, and after her death to the heirs of her body, share and share alike if more than one, and in default of issue to be lawfully begotten by the testator to be at her own disposal. It was held that the wife took a life estate, with remainder to her children as tenants in common.

The foregoing and other like cases, Mr. Jarman contends, were practically overruled in the case of *Jesson* v. *Wright*, 2 Bligh 1, where it was held that such phrases as "share and share alike," and "tenants in common," were not sufficient to show that the words "heirs of the body" were to be taken in the sense of children. Even in that case, however, Lord Eldon observed that, "The words 'heirs of the body' will indeed yield to a particular intent that the estate shall be only for life, and that may be from the effect of superadded words, or any expressions showing the particular intent of the testator," provided only such added words be clear and equivocal. Moreover, in cases decided since *Jesson* v. *Wright*, *supra*, it has frequently been held that modifying expressions, such as used in that case, were sufficient to cut down the estate from one in tail to one for life. One such case was *Right* v. *Creber*, 5 B. & Cr. 866, in which, after a life estate to a daughter, the devise over was to the heirs of her body, share and share alike, their heirs and assigns forever; and it was held that by "heirs of her body" was meant children.

Of another such case Mr. Jarman says: "Nor is *Wilcox* v. *Bellaers* [Hayes' Inquiry, 2] the only instance

in which reluctance has been manifested to follow up the principle of *Jesson* v. *Wright;* for in other cases the term 'heirs of the body' has since been cut down to children, in subservience to expressions in the context which that case had appeared forever to have stripped of all controlling operation." 2 Jarman Wills (6th ed.), 375.

In the same chapter of the work here cited, numerous instances are given of another class of cases where explanatory words in the will, as "heirs male of the body," "heirs of his or her body lawfully to be begotten as aforesaid," and "heirs male of his body for their several lives in succession according to their respective seniorities, or in such parts, shares and proportions, manner and form, and amongst them, as the said W. T., their father, should appoint," were held to mean children. In this class of cases, it will be seen, as said by Mr. Jarman, "that the testator had annexed to the term 'heirs of the body,' words of explanation, which were held to prove that he had used the expression as synonymous with *sons.*" 2 Jarman Wills (6th ed.), 379. See further, 2 Jarman Wills (6th ed.), 336; 1 Preston Estates, 349, 359, 369.

Thus, what in the beginning had been a mere life tenure by a vassal, passed at first to the heirs of the vassal, next became fixed in such heirs, and then returned as an absolute estate to the first taker, the heirs being totally cut off, whatever might have been the intention of the grantor. Finally, however, but most reluctantly, the right of the grantor to dispose of his estate in such parts and with such tenure as he desired, began to be recognized. Accordingly, in later years, in England, and still more in this country, freedom of alienation has been more largely exercised and more freely recognized, and the owner of land has

more often been enabled to dispose of it as he has seen fit.

There was a time, as the books show, when a deed from a father to a son for life, remainder to the children of the son, conveyed the absolute title to the son, however improvident such son might be, or however strong might be the desire of the father to save the estate for his grandchildren. We think that the prevailing current of the law now is, particularly as to wills, that when the intention of the donor is clearly manifest from the language used, considering the established rules of construction, such intention must prevail; in other words, that the owner of property will be permitted to do with it as he thinks best. *Rusk* v. *Zuck, Admr., post,* 388.

It is, of course, still true, at least in this State, that where the contrary intention is not clear, or where, in connection with a grant of the fee, or even of a life estate, the words "heirs," "heirs of the body," or other words of inheritance, are used to denote the successive line of those who would be entitled to take the estate, a fee simple, absolute, will pass, fees tail having been abolished by the statute, or, rather, having been declared to be the equivalent of fees simple. Section 3378, Burns' R. S. 1894 (2958, R. S. 1881). But in case a life estate only is given, and the words describing the grantees or devisees of the remainder denote children or other definite persons, or where modifying expressions are used which show that such was the meaning intended, then the persons so designated will take as purchasers, and the life estate will not be enlarged in the first taker.

"The sound rule of interpretation to be adopted in these cases," as said in 1 Preston on Estates, 376, "is that which takes the context for its guide, and which consults the general intention, and endeavors to give

it effect; and the result will be, that when the words heirs of the body are, on a sound interpretation of the will, found to be used in a collective sense, as descriptive of issue collectively, they are to be construed in their genuine and legal sense, and as words of inheritance or succession. On the other hand, where the words heirs of the body are used in a limited and confined sense, and as descriptive of children or issue in the first degree, or issue or children of a particular denomination, they are words of purchase. In wills, the object to which the courts give particular attention, aiming to ascertain the general intention, and to carry that object into effect, will always render it essential to inquire whether there was any intention to intail, and who was to be the donee in tail; and the donee under the gift for life will have an estate-tail, or for life, according to the result of that inquiry."

As to the interpretation of wills, it is also said by the same authority, 2 Preston Estates, 68: "In the construction of wills, the testator is supposed to have wanted the professional assistance, of which a party to a deed may always avail himself. The law, therefore, regards the intention, more than the precise legal words in which the testator has expressed his meaning."

Among the devises referred to by Mr. Preston, are the following: In *Doe* v. *Burnsall*, 6 Term Rep. 30, there was a devise of land to M. and the issue of her body lawfully begotten, as tenants in common, and in default of such issue, over. It was held a life estate in M. 2 Preston Estates, 255. And, in *Merest* v. *James* (ib. 261), where the devise was to a daughter for life, then to the issue of her body lawfully begotten, and in default of such issue, over; held, a life estate in the daughter.

In 2 Preston Estates, 28, the same author, speaking

of "right heirs," that is, those persons who at the death of the holder are lawfully entitled to the estate, says: "As often as a grant is to a husband or wife, for life, and a remainder is limited to the right heirs of both the husband and wife, it is a point of some difficulty to ascertain the precise operation and effect of the limitation to the heirs." And he adds: "There is great reason to conclude that the heirs will take as purchasers; and the case of *Denn* v. *Gillott*, 2 Term Rep. 431, seems to be an authority for that conclusion." Again, at page 39 of the same work it is said: "A testator may, in express terms, or by the arrangement, and consequently the plan, and sound exposition of his will, suspend the vesting of a gift to his right heirs; and it would seem to follow, that persons taking under this designation might take by purchase. The gift would be in effect, as it might be in terms, to the person who, at a *given* time, should answer the description of right heirs."

An examination of American authorities will but disclose a more marked tendency to so interpret instruments, particularly wills, whenever it may be done, that the intention shall prevail. In 1 Sharswood & Budd's Leading Cases Real Prop., 197, it is said in note that, "In furtherance of the testator's desire, even the word 'heirs' may be read in another sense, as 'sons.' *Lyles* v. *Digges' Lessee*, 6 H. & J. 364, 14 Am. Dec. 281; or 'children,' *Bunnell* v. *Evans*, 26 Ohio 409." And further: "A devise in words which would clearly give an estate in fee, will be construed a devise for life if the will contains a devise over on the death of the first taker, *Jones' Exrs.* v. *Stites*, 19 N. J. Eq. 324, and even if there is a devise over on the happening of a contingency connected with the life of the first taker, as a devise over in case the first taker shall

never have children. *Hatfield* v. *Sneden*, 42 Barb. 615; see, also, *Norris* v. *Beyea*, 13 N. Y. (3 Kern.) 273."

In the same note, at p. 199, the learned editors say: "A devise to several, to be equally divided, to them for life, and after their deaths to their lawful issue, and if any one should die leaving no issue, his or her share to be divided among the survivors, will give estates for life, with fees, * * * in remainder." Again, at p. 202, it is said: "A devise to a wife and her husband for their lives and the life of the survivor, 'subject to be divided among the heirs of her body,' and in default of heirs of the body, then over, gives a life estate. *Self's Admr.* v. *Tune*, 6 Munf. 470." And the following: " 'If in case said O. R. should live to arrive at manhood, and beget heirs lawfully, the above property to him and his heirs forever,' followed by a devise over, was held to give a life estate, to be enlarged to a fee upon the birth of issue. *Felton* v. *Billups*, 1 Dev. & Bat. Eq. 584."

The rule against perpetuities requires that an executory devise must take effect, if at all, within a limited time. A devise over on the death of the first taker "without issue," "without heirs," "without heirs of the body," "without leaving heirs," etc., has been held to be indefinite or remote, signifying without heirs generally; and hence the devise over is void. But a devise over to take effect at the death of the first taker, or at his death leaving no children, or "leaving no issue living," or "without issue alive," has been held to be definite, and the devise over good. *Wallington* v. *Taylor*, 1 N. J. Eq. (Saxt.) 314; *Den* v. *Schenk*, 3 Hals, 29, cited in 2 Sharswood & Budd's Leading Cases Real. Prop. 496.

It is therefore apparent, that the decisions of this State, cited and relied upon in the principal opinion, are not without support from English text writers

and from decisions of English courts, as well as from those of this country.   As to wills, particularly, there is a substantial harmony in all the authorities, that when the intention of the testator, subject to the rules of law in relation thereto, is ascertained, that must prevail.   It is true, and that in Indiana, as well as elsewhere, that when the words "heirs," "heirs of the body," or other words of inheritance, without modifying expressions, are used in immediate connection with the name or designation of the donee of a freehold, even of a life estate, the fee will be thereby conveyed.   If such unmodified language is used, the intention to convey all the estate to the donee is conclusively presumed in law.   But the letter, and certainly the spirit, of the rule goes no further.   If, in the devise of a life estate, the testator has used modifying words in connection with the words of inheritance, the courts will observe the meaning and force of such modifying expressions, and consider whether the intention thus shown was to give the estate to the donee and his issue from generation to generation forever, or whether, by the modifying words, he indicated his purpose to use the words of inheritance for, and to devise his property to, his children, or grandchildren, or other definite persons.   See Rice Mod. Law Real Prop., p. 706.

The power to dispose of real estate is universally regarded as an inseparable incident of a fee.   But, while a grant of the fee, or of all the estate, with power to sell, will carry the full title, yet it is equally well settled that a grant of an estate for life, with power to sell, will convey a life estate, only, with power to dispose of the same during life.   2 Preston Estates, 85, 119; Tiedeman Real Prop., section 398, and authorities cited.

If the estate is for life, with remainder to children

living at the death of the life tenant, such remainder is contingent. It may never vest, for the life tenant may not leave children living at his death. In case of two remainders, or remainder with remainder over, as in the case at bar, the first may be contingent and the second vested. Thus, to A. for life, remainder to his children surviving, remainder to B. The remainder to A.'s children is contingent; he may not leave any children surviving. The remainder to B. is vested, the enjoyment of possession postponed to the death of A. without children surviving. In case A. dies leaving no children surviving, B. succeeds at once to the possession of his remainder. Tiedeman Real Prop., section 413. And see 2 Sharswood & Budd's Leading Cas. Real Prop. 341, note 2, and p. 354, note.

If the limitation to issue is definite, as we hold it is in the case at bar, that is, to take effect in possession within a life or lives in being, it is good; and the limitation over, in default of such issue, is also good. If, however, the limitation should be indefinite, that is, remainder to issue or heirs generally, the limitation over would be too remote, and hence void as in violation of the statute against perpetuities and in favor of the vesting of estates. Section 3382, Burns' R. S. 1894 (2962, R. S. 1881).

Mr. Tiedeman (Real Prop., section 542), citing the early case of *Pells* v. *Brown*, Cro. Jac. 590, and numerous other cases, says, in note, that "Where the limitation over is to others, or to the surviving children or issue of the first taker, a *definite* failure of issue is presumed to be intended." "The tendency," says he, "is to construe 'die *without leaving* issue,' or '*leaving* no issue,' as meaning definite failure of issue. * * * So, also, was a definite failure of issue held to be intended by the clause dying 'without lawful heirs,' or 'without lawful heirs of his body.' " Dying without

issue or heirs "living" or "surviving" is always held to import a definite failure of issue. See, further, same authority, note 2 to section 47; also, 2 Washb. Real Prop., Book II, ch. 4, section 7.

In the case before us, the devise was, distinctly: First, to Edwin, an estate for the term of his natural life, and nothing more; and this in a clause by itself. In the second clause, the devise, after Edwin's death, was: "To the heirs of his body by him begotten, if there be any such heirs him surviving." The third clause contained the devise over, "should he have no heirs of his body by him begotten him surviving." There was here a definite failure of issue of the first taker; and the devise over was therefore good.

The modifying words used in connection with "heirs of his body" limit that phrase to "children," almost as definitely as if the word "children" were used itself; and the rule in Shelley's Case can have no application. See, further, *Righter* v. *Forrester*, 1 Bush. (Ky.), 278; *Mitchell* v. *Simpson*, 88 Ky. 125, 10 S. W. 372; *DeVaughn* v. *Hutchinson*, 165 U. S. 566, 17 Sup. Ct. Rep. 461, *Glover* v. *Condell*, 163 Ill. 566, 45 N. E. 173, 35 L. R. A. 360, and authorities cited in last case.

The petition is overruled.